**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**MARCO RAFIEL THOMASELLI,**

Plaintiff,

v.                                                    **CIVIL ACTION NO.: 1:18-CV-105
(KLEEH)**

**NANCY A. BERRYHILL,
Acting Commissioner of Social Security,**

Defendant.

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This case arises from the denial of Plaintiff Marco Rafiel Thomaselli's ("Plaintiff")

Title XVI application for supplemental security income ("SSI"). After Plaintiff's application

proceeded through the administrative process, a United States Administrative Law

Judge ("ALJ"), Brian Crockett, concluded that Plaintiff was not disabled within the

meaning of the Social Security Act. Plaintiff's request for review by the Appeals Counsel

was denied, making the ALJ's decision the final decision of Defendant Nancy A.

Berryhill ("Commissioner"), the acting Commissioner of Social Security. Now, Plaintiff

seeks judicial review of the Commissioner's decision. Because the Commissioner's final

decision to deny Plaintiff's claim for SSI contains no legal error and is supported by

substantial evidence, the undersigned reports and recommends that Plaintiff's Motion

for Summary Judgment [ECF No. 16] be **DENIED** and Defendant's Motion for Summary

Judgment [ECF No. 17] be **GRANTED**.

## II.   <u>PROCEDURAL HISTORY</u>

On or about July 24, 2012, Plaintiff filed his first claims for a Title II period of disability and disability insurance benefits ("DIB") and SSI, with an alleged onset date of disability of December 1, 2009. R. 156, 171. Both claims were denied on October 19, 2012, without subsequent appeal. <u>Id.</u> On or about July 11, 2014, Plaintiff reapplied for DIB and SSI, again alleging an onset date of disability of December 1, 2009. R. 12, 155, 170. Because Plaintiff's date last insured was March 31, 2012, which was before the denial of his first application for DIB, his reapplication for DIB was denied under *res judicata*. R. 12. Plaintiff's reapplication for SSI was initially denied on October 28, 2014, and upon reconsideration on April 21, 2015. R. 168, 179. After these denials, Plaintiff filed a written request for a hearing. R. 197. On March 7, 2017, a hearing was held before the ALJ. R. 109. The ALJ presided over the hearing from Morgantown, West Virginia. <u>Id.</u> Plaintiff, represented by James T. Carey, Esq., appeared and testified in person. <u>Id.</u> Linda Dezack, a vocational expert, also appeared and testified at the hearing. <u>Id.</u>; R. 349. At the hearing, Plaintiff's counsel moved to amend Plaintiff's alleged onset date from December 1, 2009 to January 1, 2013, which the ALJ granted. R. 12, 111. On May 3, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act at any time since July 11, 2014, the protective filing date of Plaintiff's most recent application for SSI. R. 12–13, 23. On March 20, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

On May 2, 2018, Plaintiff, through counsel, Mr. Carey, filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed her Answer and the Administrative Record of the proceedings on July 26, 2018. Answer, ECF No. 12; Admin. R., ECF No. 13. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and supporting briefs. Pl.'s Mot. Summ. J., ECF No. 16; Def.'s Mot. Summ. J., ECF No. 17. Neither party filed a response.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

### III. BACKGROUND

#### A. Personal History

Plaintiff was born on June 11, 1971 and was forty-three years old at the time he made his reapplication for DIB and SSI. R. 12, 259, 266. He is 5'8" and weighs approximately 200 pounds. R. 113. Plaintiff is unmarried, and he lives with his mother. Id. Plaintiff has an associate degree in HVAC Industrial Maintenance. R. 112. Plaintiff claims he last worked in 2004 or 2005. R. 114. Plaintiff alleges that he is permanently and totally disabled due to Crohn's disease, asthma, high blood pressure, chronic obstructive pulmonary disease ("COPD"), diabetes, and mental health. R. 155, 170.

B.    **Medical History**

In accordance with the Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. Order, ECF No. 15, at 2. Accordingly, the undersigned relies upon those stipulated facts throughout this report and recommendation. See Pl.'s Mem. Supp. Mot. Summ. J. Ex. 1, at 2–7, ECF No. 16-1; Def.'s Brief Supp. Mot. Summ. J. 4–7, ECF No. 18.

## IV.    THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the

4

duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

(iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined to be disabled or not disabled during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## V.     ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that Plaintiff had not "definitively engaged" in any substantial gainful activity at any time during the period at issue, i.e. since the July 11, 2014, protective filing date of Plaintiff's reapplication for SSI. R. 15. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: asthma/COPD and Crohn's disease. Id. At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments. R. 18–20. At step four, the ALJ determined that Plaintiff has the RFC "to perform a range of work activity that requires no more than a 'medium' level of physical exertion, and entails no concentrated exposure to temperature extremes, vibration, pulmonary irritants or hazards . . . ." R. 20. The ALJ then determined that Plaintiff "lacks the ability to fully perform the requirements of any 'vocationally relevant' past work." R. 21–22. At step five, the ALJ concluded that since July 11, 2014, Plaintiff has remained capable of performing other jobs in the national economy that exist in significant numbers. R. 22–23. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. R. 23.

## VI.     DISCUSSION

### A.     Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "A factual finding by the ALJ is not binding if it was

reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

**B.    Contentions of the Parties**

In his Motion for Summary Judgment, Plaintiff contends that the ALJ committed two errors in his decision. ECF No. 16-1, at 7, 11. Specifically, Plaintiff submits that in his RFC determination: (1) "the ALJ decision erred in failing to properly weigh Dr. Purewal's opinions under the treating physician rule" and (2) "the ALJ decision erred in failing to properly consider the Plaintiff's description of his symptoms that prevent him from being able to attend a job on a regular basis or be on task while on the job." Id. On account of these errors, Plaintiff requests that the Court find him disabled as of August 1, 2014, or in the alternative, remand his case. Id. at 13–14.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed as a matter of law. ECF No. 17, at 1. Addressing Plaintiff's arguments for summary judgment, the Commissioner avers that: (1) "the ALJ provided well-supported reasons for the weight he accorded to the opinions of Amandeep Purewal, M.D." and Plaintiff is essentially asking the Court to reweigh the evidence with respect to Dr. Purewal's opinions and (2) "the ALJ sufficiently articulated the well-supported reasons for his determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely persuasive." ECF No. 18, at 7, 11. Accordingly, the Commissioner requests that the Court grant her motion for summary judgment and affirm her final decision. Id. at 15.

**C.    The ALJ's Decision Was Conducted in Conformity with the Law and Is Supported by Substantial Evidence**

**1.   The ALJ's Assignment of Little Weight to Dr. Purewal's Opinion Is Supported by Substantial Evidence and Was Determined in Conformity with the Law**

Plaintiff argues that the ALJ failed to properly apply the treating physician rule when evaluating Dr. Purewal's opinion. ECF No. 16-1, at 7. Plaintiff contends that because Dr. Purewal's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, the ALJ erred by not giving Dr. Purewal's opinion controlling weight. Id. at 7, 9.

An ALJ must "weigh and evaluate every medical opinion in the record." Monroe v. Comm'r of Soc. Sec., No. 1:14CV48, 2015 WL 4477712, at *7 (N. D. W. Va. July 22, 2015). When evaluating medical opinions, the ALJ must "go through the exercise of carefully balancing the evidence, assigning weights to the competing opinions . . . and

explaining the rationale for doing so." Smith v. Barnhart, 395 F. Supp. 2d 298, 307 (E.D.N.C. 2005). That careful balancing necessarily requires that the ALJ explain why the "medical evidence in the record supports the opinions or how the opinions are consistent with the medical evidence." Buchanan v. Colvin, No. 1:14cv209, 2016 WL 485339, at *4 (W.D.N.C. Jan. 19, 2016).

If a treating source's medical opinion on the nature and severity of a claimant's impairments is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it is given controlling weight. 20 C.F.R. § 416.927(c)(2). "While the testimony of a treating physician is often accorded greater weight, this 'treating physician rule . . . does not *require* that the [treating physician's] testimony be given controlling weight." Criss v. Comm'r of Soc. Sec., No. 5:16CV86, 2017 WL 2730647, at *3 (N. D. W. Va. June 26, 2017) (emphasis added) (quoting Anderson v. Comm'r of Soc. Sec., 127 F. App'x 96, 97 (4th Cir. 2005)). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, then it should be accorded significantly less weight." Thompson v. Astrue, 442 F. App'x 804, 808 (4th Cir. 2011) (quoting Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

When a treating source opinion is not given controlling weight, the ALJ is to apply the six regulatory factors in determining the weight to give the medical opinion. 20 C.F.R. § 416.92(c)(2). Those six factors are: (1) the examining relationship, (2) the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c). Social Security Ruling 96-2p specifically addresses the ALJ's duty of explanation when

a treating source opinion is not given controlling weight and the ALJ's decision is a denial of benefits, stating that:

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The ALJ does not need to specifically list and address each factor in his decision, so long as sufficient reasons are given for the weight assigned to the medical opinion. See Pinson v. McMahon, No. 3:07-1056-PMD-JRM, 2009 WL 763553, at *10 (D.S.C. Mar. 19, 2009) (holding that the ALJ properly analyzed a treating physician's medical opinion even though he did not list the five factors and specifically address each one). "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) (citations omitted) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1077 (7th Cir. 1992)).

In reviewing Plaintiff's case, the ALJ was required to evaluate the opinion of Dr. Purewal, dated March 2, 2017. R. 1991–95. In his "Inflammatory Bowel Disease Treating Physician Data Sheet," Dr. Purewal opined that Plaintiff can only stand and/or walk for a maximum of 2 hours in an 8-hour workday. R. 1994. He also opined that Plaintiff can frequently and occasionally lift and/or carry a maximum of 20 pounds. R.

1994–95. Finally, Dr. Purewal also opined that Plaintiff has had these limitations since March 2012. R. 1995.

The ALJ assigned "little weight" to Dr. Purewal's opinion for several reasons. R. 21. First, the ALJ explained that Dr. Purewal's opinion is not supported by the weight of the evidence and affords no explanation for all the evidence cited in the decision to the contrary. Id. Second, the ALJ noted that Dr. Purewal originally hand-wrote that Plaintiff can occasionally lift 30 pounds, but he crossed that out and selected 20 pounds from a list. Id. Third, the ALJ mentioned Plaintiff's 2014 hospitalization for acute renal failure and noted that the physicians' notes indicated an expectation that Plaintiff return to work. Id. Fourth, the ALJ noted that Dr. Purewal opined that all of Plaintiff's limitations had been present since March 2012, even though Plaintiff was alleging disability only since January 2013 and had no eligibility for benefits prior to August 2014. Id. Finally, the ALJ mentioned Plaintiff's 2016 surgical procedure for his Crohn's disease and noted that the procedure produced significant improvement and relief of Plaintiff's Crohn's symptoms. Id. The ALJ concluded that based on this evidence, Dr. Purewal's opinion ascribed limitations based upon an incomplete understanding of Plaintiff's capabilities. Id.

To begin, the ALJ discussed Plaintiff's 2014 hospitalization in detail. R. 19. Plaintiff was admitted to Weirton Medical Center on June 30, 2014, for rapid heartbeat, passing out, syncope, acute urinary tract infection, and acute renal failure. R. 705, 19. Plaintiff advised his physicians that he had "worked several days doing physical [sic] demanding labor in the hot sun." R. 19, 709, 711; see R. 487 (Dr. Purewal's consult notes state "[Plaintiff] apparently was working on a roof in the heat"), 489 (Sean Nolan,

Case 1:18-cv-00105-TSK-RWT Document 20 Filed 01/24/19 Page 12 of 21 PageID #: 2131

M.D., consult notes state "[Plaintiff] was working on hot roof between 7:00 in the morning and noon"). Plaintiff improved significantly during hospitalization, and he received counseling from Dr. Hanson regarding "the importance of taking in a great deal of fluid *while working in hot conditions in the future.*" R. 19, 709 (emphasis added). Upon such advice, Dr. Hanson cleared Plaintiff to return to work. R. 480, 710; see ECF No. 18, at 5. Indeed, although consulting physician, Dr. Emmanouel Coroneos, diagnosed renal failure due to multiple etiologies, ECF No. 16-1, at 9, R. 490, Plaintiff's physician simply advised him to drink more water when he works in hot conditions in the future. R. 21, 479, 709. This evidence supports the ALJ's conclusion that Plaintiff was working, engaging in physically demanding labor, at the time of his 2014 hospitalization and that Dr. Hanson expected him to return to such work, "contraindicat[ing] any perception by [Dr. Hanson] that [Plaintiff] was permanently and totally disabled." R. 19.[1]

The ALJ also discussed Plaintiff's 2016 surgery in detail. On October 10, 2016, Plaintiff underwent exploratory laparotomy, ileocecal resection, and resection of the distal small bowel diverticulum to treat his Crohn's disease. R. 19, 1902. Fifteen days post-op, Plaintiff reported to his surgeon, Thomas Lheureau, M.D., that all his pre-operative symptoms had resolved and that he was having "essentially solid bowl movements with no signs of bloody stools or mucousy stools." R. 19, 1903. Thirty-six days post-op, Plaintiff reported two to three days of right upper abdominal pain, "not nearly as severe as his preoperative pains." R. 19, 1909. Plaintiff also reported that he

---

[1] It is unclear how Plaintiff's 2014 hospitalization is related to his severe impairments of Crohn's disease and asthma or is representative of his functional limitations on account of such impairments, as Plaintiff suggests in his brief. See ECF No. 16-1, at 10. Based on the physicians' notes cited by the ALJ, this hospitalization appears to be the result of Plaintiff's failure to properly hydrate while performing demanding physical labor in the heat. See, e.g., R. 479, 709.

"returned back to work [and] has been carrying on normal activities." Id.; R. 19. Fifty-two days post-op, Plaintiff reported that he was doing much better. R. 1912, R. 20. Any mild abdominal pain was related to twisting and bending, not food. R. 1912. Plaintiff reported that he had returned to work. Id. While Plaintiff was hospitalized for seven days for this procedure, the evidence supports the ALJ's conclusion that this procedure produced significant improvement and relief in Plaintiff's Crohn's symptoms. R. 20–21. Indeed, the evidence indicates that Plaintiff obtained enough relief to engage in some kind of work-related activity less than six weeks post-op.

The ALJ also concluded that there is "little to no compelling evidence of any worsening of [Plaintiff's Crohn's disease] since his first applications were denied in October 2012." R. 18. The ALJ noted that prior to his 2016 surgery, Plaintiff's Crohn's disease was relatively stable with medication, with only some occasional flare-ups. R. 20. Plaintiff's Stipulation of Facts provides evidence supporting this conclusion. ECF No. 16-1, at 2–7. While Plaintiff had several emergency room visits for abdominal pain/Crohn's flare-ups in the first half of 2014, between August 3, 2014, and October 1, 2016, Plaintiff had only one emergency room visit for abdominal pain. Id. at 3–4.[2]

As a final matter, Plaintiff argues that the ALJ's assignment of little weight to Dr. Purewal's opinion was error because the ALJ assigned great weight to the opinions of the state agency consultants and those consultants did not have all of Plaintiff's medical

---

[2] The undersigned notes that Plaintiff has included evidence in his Stipulation of Facts that was not presented to the ALJ. ECF No. 16-1, at 5–6. The Commissioner argues that the undersigned may not consider this evidence because it was not before the ALJ. ECF No. 18, at 3 n.1. This evidence was presented to the Appeals Council, which determined that it did not show a reasonable probability that it would change the outcome of the decision. R. 2. Plaintiff did not argue that this finding is error, nor has Plaintiff argued that this Court should consider the evidence not presented to the ALJ. Accordingly, the undersigned has not considered this evidence. See R. 30–103, 133–53.

records for their review. ECF No. 16-1, at 10–11. However, an ALJ may rely on state agency medical opinions even though there is a delay between the formation of the medical opinion and the hearing. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical . . . consultant's finding' . . . is an update to the report required."); see also Thomas v. Colvin, No. 3:13-CV-56, 2014 WL 2892360, at *7 (N. D. W. Va. June 25, 2014) (adopting the Chandler court's rationale when concluding that a one year passage between the formation of the medical opinion and the hearing did not invalidate or otherwise undermine the medical opinion). So, the fact that the state agency consultants did not have all the medical records when they performed their reviews does not make the ALJ's determination regarding *Dr. Purewal's opinion* erroneous especially when, as articulated above, there is substantial evidence to support that determination. Additionally, in this case, the ALJ did not rely on the state agency opinions when deciding to give Dr. Purewal's opinion little weight. R. 21.

While the ALJ's explanation for the weight given to Dr. Purewal's opinion may have been insufficient had the ALJ relied *only* on the fact that Dr. Purewal made a correction on his form or *only* on the fact that Plaintiff is not eligible for benefits prior to August 1, 2014, the ALJ did much more than that in his decision. It is not a reviewing court's role to reweigh the evidence before the ALJ. Johnson, 434 F.3d at 653. After a

careful review, the undersigned finds that the ALJ's decision not to give Dr. Purewal's opinion controlling weight under the treating physician rule is supported by substantial evidence. Additionally, the undersigned finds that the ALJ carefully balanced the evidence, assigned a weight to Dr. Purewal's opinion, and explained his rationale for doing so. See Smith, 395 F. Supp. 2d at 307. Accordingly, the undersigned concludes that the ALJ's decision to assign little weight to Dr. Purewal's opinion was determined in conformity with the law and is supported by substantial evidence in the record.

### 2. The ALJ's Credibility Assessment of Plaintiff Is Supported by Substantial Evidence

Plaintiff argues that the ALJ's decision failed to explain how Plaintiff's reported symptoms are inconsistent with the evidence. ECF No. 16-1, at 12. More precisely, Plaintiff argues that the ALJ failed to address how Plaintiff's need to miss work and his need for extensive bathroom breaks is inconsistent with Plaintiff's lengthy and well-documented history of Crohn's disease. Id. at 13. Plaintiff testified at the hearing that he has severe pain from Crohn's disease seven to ten times per month, during which time he is unable to do anything around the house. R. 124. Plaintiff also testified that he must use the bathroom ten to fifteen times per day for ten to thirty minutes each time. R. 120.

Because the ALJ has the opportunity to observe the demeanor of the claimant, the ALJ's observations concerning the claimant's credibility are given great weight. Shively, 739 F.2d at 989–90. This Court has determined that "[a]n ALJ's credibility determinations are 'virtually unreviewable' . . . ." Ryan v. Astrue, No. 5:09CV55, 2011 WL 541125, at *3 (N. D. W. Va. Feb. 8, 2011). The ALJ's "determination . . . must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any

15

subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). "If the ALJ meets . . . her basic duty of explanation, then 'an ALJ's credibility determination [will be reversed] only if the claimant can show [that] it was 'patently wrong.'" Criss, 2017 WL 2730647, at *3 (alteration in original) (citations omitted) (quoting Sencindiver v. Astrue, No. 3:08-CV-178, 2010 WL 446174, at *33 (N. D. W. Va. Feb. 3, 2010)).

While evidence of work performed by a claimant is not dispositive of disability or non-disability, evidence of work performed by a claimant may be used in assessing the claimant's credibility. See 20 C.F.R. § 416.971 ("The work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level."); see also Sue E. v. Berryhill, No. 6:17-cv-46, 2018 WL 4346835, at *4 (W. D. Va. Aug. 15, 2018) ("Evidence of work during the relevant period is a legitimate factor the ALJ may consider when determining the consistency of a claimant's subjective claims of disability."); Lafferty v. Colvin, No. 4:13-cv-49, 2015 WL 156772, at *17 (W. D. Va. Jan. 13, 2015) ("The ALJ may consider the applicant's recent work as he would any other evidence that is relevant to her credibility."). Additionally, where a claimant repeatedly reports to his doctors that he is engaging in work activities, it is reasonable for an ALJ to conclude from that evidence that a claimant retains the functional capacity to work. See Jones v. Barnhart, No. 7:06cv144, 2007 WL 178222, at *3 (Jan. 18, 2007) ("[Claimant] reported that just four months earlier he had been employed as a construction laborer. . . . [Claimant] informed Dr. Silver that he continued to work as a farmer. . . . [Claimant] reported to Dr. Hill that he was now working part-time on a dairy farm. . . . Even

16

assuming that [Claimant's] employment . . . did not qualify as substantial gainful activity, the fact that he was physically and mentally able to maintain employment requiring significant physical exertion, despite his allegedly disabling pain, indicates that he retains the functional capacity to work."). Ultimately, "it is the ALJ's duty, not this Court's, to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work." Redditt v. Colvin, No. 7:13-cv-391, 2014 WL 2800820, at *6 (W. D. Va. June 18, 2014).

In this case, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the symptoms" alleged by Plaintiff. R. 20. However, the ALJ went on to conclude that "for reasons explained in this decision, [Plaintiff's] March 2017 hearing testimony and other attributed assertions concerning the intensity, duration and limiting effect of such symptoms are not found to be fully persuasive, in view of the objective medical and other longitudinal evidence of record." Id. In concluding that Plaintiff's statements regarding his limitations were not entirely credible, the ALJ explained that while Plaintiff experienced problems related to his Crohn's disease during the period at issue, many of his "symptoms appear to have resolved following a recent surgical procedure in October 2016." Id. Prior to that procedure, the ALJ also noted that Plaintiff's condition and functionality remained relatively stable with medication with only some occasional flare-ups. Id. Furthermore, because of the extensive evidence that Plaintiff was continuing to engage in significant work activity "off the books," the ALJ concluded that Plaintiff's reliability as an informant was "somewhat suspect." R. 20–21.

17

The medical records relied upon by the ALJ, previously addressed herein, support the ALJ's conclusions that Plaintiff's condition and functionality remained relatively stable with medication prior to his 2016 surgery and that many of Plaintiff's Crohn's symptoms resolved after that surgery. See Section VI.C.1. In addition to this medical evidence, the ALJ was also presented with other evidence that Plaintiff was continuing to work during the relevant period. First, Plaintiff's 2014 hospitalization was a result of Plaintiff engaging in demanding physical labor in the hot sun *for several days*. R. 19, 487, 489, 709, 711. His physician for this episode clearly expected Plaintiff to return to that physically demanding labor and did not advise him to refrain from doing so. R. 19, 479–80, 710. The treatment notes concerning Plaintiff's 2016 surgery likewise indicate that Plaintiff returned to work after the surgery and was carrying on normal activities. R. 19, 1909, 1912. After recovery from the procedure, Plaintiff's surgeon expressed no restrictions on Plaintiff's diet or activity. R. 1910, 1913.

Additionally, the ALJ discussed the inconsistencies in Plaintiff's work history to support his conclusion that Plaintiff was performing significant work activity off the books and was less than fully credible. R. 20–21. In one instance, Plaintiff reported that he was working 50 hours per week until December 2009. R. 19, 327. Yet, he officially reported earnings of only $1,810 in 2006, $6,079 in 2007, $1,540 in 2008, and $0 in 2009. R. 18, 279. In another instance, Plaintiff reported that he worked for seventeen years until his physician told him to stop working in 2011. R. 19, 765. But, at the hearing, Plaintiff stated that the last time he worked was 2004 or 2005. R. 114.

All this evidence substantially supports the ALJ's conclusion that Plaintiff was performing significant work activity during the relevant period. And even if this work

activity did not qualify as substantial gainful activity, Plaintiff's ability to regularly physically and mentally engage in work related activity indicates that he is a suspect informant and retains the functional capacity to work, thereby supporting the ALJ's credibility determination. See Jones, 2007 WL 178222, at *3.

As a final matter, the undersigned notes that Plaintiff does not point to any objective evidence in the record that supports his subjective complaints that (1) his pain is so severe he cannot do anything around the house seven to ten days per month and (2) he needs to use the bathroom ten to fifteen times per day for ten for thirty minutes each time. ECF No. 16-1, at 6, 12–13. A diagnosis of Crohn's disease does not automatically validate Plaintiff's subjective complaints regarding how it affects his functional limitations, as Plaintiff's argument seems to suggest. See id. at 13. These subjective complaints were presented to the ALJ at the hearing, R. 120, 124–25, and although the ALJ does not specifically address these complaints in his decision, he provides substantial evidence to support his determination of Plaintiff's credibility. Accordingly, the ALJ did not err.[3]

After a careful review of the ALJ's decision and the evidence of record, the undersigned finds that the ALJ was sufficiently specific to make clear his reasoning in finding Plaintiff's assertions concerning the intensity, duration, and limiting effects of his symptoms not fully persuasive. Because the ALJ met his basic duty of explanation, the ALJ's credibility determination will only be reversed if it is patently wrong. See Criss,

---

[3] And even if it was error for the ALJ not to specifically address these two subjective complaints, the error would be harmless because Plaintiff has failed to identify objective evidence in the record to support these complaints, and therefore, has failed to show that remand would change the outcome of the ALJ's decision. See Hurtado v. Astrue, 2010 WL 3258272, at *11 (D.S.C. July 26, 2010) ("The court acknowledges there may be situations in which an error in an opinion is harmless because it would not change the outcome of the ALJ's decision."); R. 1052 (April 28, 2015, Plaintiff reports one bowel movement per day), 1057 (May 6, 2014, Plaintiff reports one bowel movement per day), 1195 (October 5, 2016, Plaintiff reports that he has very rare bowel habit difficulties).

2017 WL 2730647, at *3. Here, Plaintiff fails to satisfy this high burden. Accordingly, the Court concludes that the ALJ's credibility determination is supported by substantial evidence.

### VII.   RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for SSI contains no legal error and is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No.16] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 17] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objections are made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Thomas S. Kleeh, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845-48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures

for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 24th day of January, 2019.

_____

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE